UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**ESSEX INSURANCE COMPANY,**

    **Plaintiff,**

**v.**                                                      **Consolidated Case No.**
                                                             **8:05-cv-648-T-17TBM**

**RODGERS BROS. SERVICES, INC.,**

    **Defendant.**
_____/

**WESTERN WORLD INSURANCE**
**COMPANY,**

    **Plaintiff,**

**v.**

**RODGERS BROS. SERVICES, INC.;**
**PALL AEROPOWER CORPORATION,**

    **Defendants.**
_____/

**REPORT AND RECOMMENDATION**

    THIS MATTER is before the court on referral by the Honorable Elizabeth A. Kovachevich for a Report and Recommendation on the parties' **Joint Motion Requesting Initial Ruling on "Care, Custody or Control" Issue and Authorizing Time for Settlement Discussions** (Doc. 82).[1]  By this motion, Essex Insurance Company ("Essex") and Rodgers

---

[1] The determination of this issue is deemed critical by the attorneys to their cross-motions for summary judgment and/or declaratory judgment. See (Docs. 72, 73, 74, and 75). Essex and Rodgers Bros. believe that they can settle the remaining issues in their dispute upon this court's ruling on the instant issue.

Bros. Services, Inc. ("Rodgers Bros.") seek an initial ruling on the issue of whether the subject Mori Seiki machinery were in the care, custody, or control of Rodgers Bros. when it was damaged in an accident.  Both Essex and Rodgers Bros. assert that the machine base unit ("base unit" or "milling machine") was *not* in the care, custody, or control of Rodgers Bros. when it was damaged and therefore the damages to that machine are not covered under the Essex insurance policy but rather under the Western World Insurance Company ("Western World") commercial general liability policy.  Western World contends that both the milling machine and the tool changer were in the care, custody, or control of Rodgers Bros. when damaged and are therefore excluded from coverage under its policy.

Oral arguments on the motion were conducted on January 31, 2007.

I.

Certain facts appear undisputed.  Rodgers Bros. is a Florida corporation in the business of moving industrial machinery and equipment.  Essex, a Delaware corporation with its principal place of business in Virginia, transacts business and issues insurance policies in the state of Florida.  Western World is a New Hampshire company that transacts business and issues insurance policies in the state of Florida.  Pall Aeropower Corporation ("Pall") is a New York corporation engaged in manufacturing within the state of Florida.

On or about September 1, 2003, Essex issued to Rodgers Bros. a Moving and Rigging Floater policy, Policy Number 4CB4263.  In pertinent part, the Moving and Rigging Floater policy states:

> I. This policy insures property: in the care, custody or control of the Assured for the purpose of transportation, installation, rigging, moving or erection. Such property consisting principally of **INJECTION MOLDS, INDUSTRIAL MACHINERY, HVAC AIR HANDLER PLACEMENT.**
>
> II. This Policy Insures Against: All Risks of direct physical loss or damage to the insured property from any external cause (except as hereinafter excluded) while being moved [by certain specified equipment].

(Doc 1-2 at 2) (emphasis in the original). Western World issued to Rodgers Bros. a Commercial Lines Policy, Policy Number NPP853150, with effective dates from September 1, 2003, to September 1, 2004. The commercial general liability coverage form of the policy provides:

> 1. Insuring Agreement.
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But . . .
>
> 2. Exclusions
>    This insurance does not apply to: . . .
> j. Damage to property.
>    "Property damage" to: . . . (4) Personal property in the care, custody or control of the insured.

Case No. 8:05-cv-980-T-27TBM (Doc. 1-3 at 9, 12).

In or about March 2004, Rodgers Bros. entered into an agreement with Pall to offload and move "two Mori Seiki MT2000A1SZ180 and six crates of the machine's components" into Pall's plant.[2] (Doc. 75-2). In anticipation of the move, Pall's facility supervisor, Dennis C. Destafano, created a computer-aided draft and design sketch indicating where the machinery was to be placed by Rodgers Bros. He then passed his drawings on to the safety committee with instructions to clear and cordon off the designated area with caution tape. A clear passage was created, and although it is not apparent from photographs, the area immediately around the location where the machines were to be placed was cordoned off in some fashion to keep persons out of the area until the placement of the machines was complete. According to D. Steven Hyatt, another Pall employee, the final location for each of the machines was marked on the floor by tape.

Pursuant to the agreement, on March 15, 2004, Rodgers Bros.'s employees (using equipment other than that listed in the Essex policy) offloaded the machinery and parts in an area designated by Pall, moved the first Mori Seiki base unit into the Pall plant, and placed and positioned it as directed by Pall. Rodgers Bros. then moved the second machine, the tool changer, into the Pall facility. While Rodgers Bros. was moving the tool changer toward its designated location, a bracket pivoted, causing the tool changer to fall onto the milling machine, damaging each and rendering them inoperable.

Hyatt observed and photographed the move and oversaw the final placement of the milling machine. By his testimony and that of James Pongratz, the Rodgers Bros. employee

---

[2]The machinery to be moved consisted of two sets of machines, one base unit or milling machine and one tool changer in each set plus component parts.

4

in charge at the scene, once the milling machine was satisfactorily in place on its pads, Rodgers Bros. was to have no further involvement with the machines. It is also clear that Rodgers Bros. was completely in charge of the offloading and physical movement of the machines into the Pall facility. The second milling machine and tool changer were moved into the facility without incident.[3] Rodgers Bros. removed the damaged machines that same day. The parties appear to agree that while it is not mentioned in the contract, it was anticipated that Rodgers Bros. would be called back to the facility at a subsequent date to lift the tool changer into position so that technicians could finally connect it to the milling machine. This did not occur in this case.

From the pleadings, it appears the milling machine is valued in excess of $470,000.00, and the tool changer is valued at about $74,550.00. Pall presented a claim for losses in excess $400,000.00, and in turn, Rodgers Bros. submitted the claim to Western World under the commercial general liability policy. Rodgers Bros. has also made a claim to Essex under the Moving and Rigging Floater insurance policy for damages of approximately $550,000.[4]

On April 4, 2005, Essex initiated the instant action by filing a Petition for Declaratory Judgment (Doc. 1). By this two-count complaint, Essex requests this court to determine and adjudicate its rights and obligations with respect to the Moving and Rigging

---

[3]While it appears of little consequence, it is unclear whether the first set of machines was successfully moved into the facility and the accident occurred on the move of the second set of machines or vice versa.

[4]Essex alleges this amount in its petition.

Floater policy and to declare that the policy does not cover Rodgers Bros.'s claims for damage to either of the Mori Seiki machines. It contends that there is no coverage for the damages to the milling machine because it was already situated at its final destination and was no longer in Rodgers Bros.'s care, custody, or control when the accident occurred.[5]

On May 24, 2005, Western World filed a Complaint for Declaratory Relief in Case No. 8:05-cv-980-T-27TBM, seeking a finding that the damage to the equipment is excluded from coverage under the commercial general liability policy issued by Western World to Rodgers Bros. because the equipment was, at the time it was damaged, in the care, custody, or control of Rodgers Bros. Western World seeks a declaration that it is neither responsible for defending or indemnifying Rodgers Bros. on the claims by Pall. See Case No. 8:05-cv-980-T-27TBM (Doc. 1).

Upon stipulated motion of the parties, this court consolidated these two cases on September 20, 2005. See (Doc. 10).

Thereafter, Western World, Essex, and Rodgers Bros. each filed a dispositive motion (Docs. 73, 74, 75). Given the primacy of the care, custody, or control issue under these motions, the parties have requested and the court has agreed to make an initial ruling on this issue while deferring ruling on the pending motions.

---

[5]Unrelated to the issue presented by this motion is its further contention that there is no coverage to either piece of machinery because Rodgers Bros. chose to use equipment other than that specified in the policy.

II.

Resolution of the issue raised on this motion requires the court to construe the meaning of the care, custody, or control provision in the contracts.[6] The matter is governed by Florida law. A review of the case law initially indicates that courts generally consider such care, custody, or control exclusions to be ambiguous and thus they are construed even more strictly against the insurer than similar provisions in coverage clauses. Childtime Child Care, Inc. v. Colony Ins. Co., 946 So. 2d 1205 (Fla. Dist. Ct. App. 2006); Mich. Mut. Liab. Co. v. Mattox, 173 So. 2d 754 (Fla. Dist. Ct. App. 1965); Phoenix of Hartford v. Holloway Corp., 268 So. 2d 195 (Fla. Dist. Ct. App. 1972). The law also appears established that the determination of whether the care, custody, or control exclusion applies depends on a fact-sensitive determination of whether the property was in the *possessory* control (rather than the proprietary control) of the insured at the time of the incident. "Florida . . . holds that where the insured has possessory control of the property, the exclusion applies." Shankle v. VIP Lounge, Inc., 468 So. 2d 548, 549 (Fla. Dist. Ct. App. 1985) (citing Phoenix); Glens Falls Ins. Co. v. Fields, 181 So. 2d 187 (Fla. Dist. Ct. App. 1965); Mich. Mut., *supra*.[7]

---

[6]The issue has not been briefed on this motion, but it was addressed at arguments and is addressed in the parties' motions for summary judgment and their responses. See (Docs. 73, 83, 85, 97, 98; 74, 86-88; 75, 80-81).

[7]The courts in Michigan Mutual and Glens Falls relied heavily upon the decision in Elcar Mobile Homes, Inc. v. D.K. Baxter, Inc., 169 A.2d 509 (N.J. Super. Ct. App. Div. 1961). In Elcar, the New Jersey court suggested that what constituted "care, custody or control" depends on the facts and circumstances of a given case with consideration given to such matters as whether the property is realty or personalty; the nature of the property; location, size, shape, and other characteristics of the property; the relation of the insured to the property; and what the insured and others are doing with it.

The decision in Childtime Child Care, Inc. v. Colony Insurance Co., *supra*, is instructive of the proper analysis. There, Steamway, a commercial carpet cleaning and floor cleaning company contracted to clean floors at Childtime Child Care's facility. To facilitate the cleaning, Steamway employees removed furniture to the outside of the building, where it was subsequently damaged by rainfall. Childtime made a claim for damages against Steamway, which in turn filed the claim with its liability insurer, Colony Insurance Company ("Colony"). Colony denied the claim relying on the exclusion from coverage for personal property in the care, custody or control of the insured. The trial court granted Colony summary judgment on a finding that the furniture was in the care, custody, or control of Steamway and therefore within the policy exclusion. Florida's First District Court of Appeal disagreed and reversed.

In reaching its conclusion, the court reviewed the decisions in a number of cases, including Elcar, Michigan Mutual, Glens Falls, and Phoenix of Hartford, and determined that at the time of the damage, this furniture was no longer in the control of Steamway and therefore the exclusion did not apply. Significant to the court's decision was the generally accepted purpose of the exclusion, to reduce the incentive for fraud. Citing Appleman's treatise, the court stated,

> The "care, custody, or control" provision of a comprehensive liability policy is aimed at eliminating coverage where the insured is closely related to some type of work related situation where the insured is exercising some sort of control over the property subsequently damaged and to remove the inducement for the insured to submit exaggerated or false claims and to avoid the guarantee of workmanship.

Childtime, 946 So. 2d at 1207 (citing 7A Appleman, Ins. Law & Practice § 4493.03 (1979)). The court added, however, that "[p]ertinent case law recognizes . . . that the goal of the exclusion, to reduce the incentive for fraud, is of lesser relevance in situations where title to the property remains in other persons, and the insured is neither renting not actively using the property at the time of the damage." Childtime, 946 So. 2d at 1207.  In the given facts, the court found the recognized purpose of the exclusion was inapplicable, as Steamway did not own the damaged property and its relationship with it was only passive.  There, the court held that the care, custody, or control exclusion did not apply.  Id. at 1209.

### III.

Rodgers Bros. argues that Western World is liable for the damage to the milling machine because the facts clearly establish that Rodgers Bros. had completed the offloading and placement of the base machine within the Pall facility at the location requested by Pall and it was to have no further involvement with the unit.  Thus, the milling machine was no longer personal property in its care, custody, or control at the time it was damaged, and the claim for damage to this machine should be paid by Western World.  As for the tool changer, since Rodgers Bros. had custody and control over it while moving the unit into the Pall facility, it accepts that the damages to the tool changer are excluded under the Western World policy but covered under the Essex policy.  In legal support of its position, it acknowledges Michigan Mutual and Glens Falls but relies chiefly on the more recent decision in Childtime as the controlling authority.

Essex, in principle and without waiving other defenses, agrees with this assessment and the allocation of coverage. At arguments, Essex urged the court to consider three other matters in deciding who had the care, custody, or control of the base unit: (1) that the machinery was either in the care, custody, or control of Rodgers Bros. or Pall; coverage for the damage lies either with Essex or Western World but not both; and its coverage provisions are more restrictive than those in Western World's policy[8] and would allow coverage only for the damages to the tool changer; (2) that the language in Western World's policy is within the policy exclusions, and must be construed strictly against Western World; and (3) that the undisputed facts establish that Rodgers Bros. had completely fulfilled its obligation to move and place the base unit at the time the accident occurred.

As a factual matter, Western World argues that the two pieces of equipment were related component parts; that the machine could not function as intended unless the parts were mated together; and that until such time as Rodgers Bros. finished all its work, it maintained care, custody, or control over all the parts. It agrees that the legal issue is governed by Florida law and depends on who had the possessory control of the equipment as opposed to the proprietary control.[9] It urges that throughout the move and beyond, Rodgers

---

[8]Essex policy provides coverage for property "in the care, custody or control of the [insured] *for the purpose of transportation, installation, rigging, moving or erection.*" (Doc. 1-2 at 2) (emphasis added). By its argument, because the milling machine was not being transported, installed, rigged, moved, or erected at the time it was damaged, there could be no coverage for damages to it under the Essex policy.

[9]While acknowledging that Florida law controls, Western World cites several cases from other states as persuasive authority for its conclusion that possessory control over both pieces of equipment remained with Rodgers Bros. at the time of this occurrence. See (Doc. 73 at 4-6) (citing Condenser Serv. & Eng'g Co. v. Am. Mut. Liability Ins. Co., 133 A.2d 395

10

Bros. was in possessory control of the machinery. By its view, until such time as Rodgers Bros. completed all of its work, it maintained possessory control over all the Mori Seiki machinery. In the circumstances where it had not completed the job, the possessory control of both pieces of machinery remained with it at the time the damage occurred.

IV.

Upon consideration, I agree with the position taken by Essex and Rodgers Bros. that at the time of this occurrence, the tool changer was in the care, custody, or control of Rodgers Bros., but the milling machine was not. As noted above, the issue is decided by the factual determination of who had possessory control of the property at the time of the damage. Here, the facts readily establish that Rodgers Bros. had possessory control of the Mori Seiki machinery during its offloading and movement into the Pall facility.[10] In the case

---

(N.J. 1957) (setting out a two-part test in which the "care custody or control" exclusion applies if (1) the property was in the possessory control of the insured and (2) the property was a "necessary element of the work performed [by the insured]."); Bolanowski v. McKinney, 581 N.E.2d 345 (Ill. App. Ct. 1991); (possessory control must be exclusive at the relevant time and not temporary access or limited possession; however, exclusive possessory control need not be continuous or involve intimate handling of the property. The inquiry instead involves factors such as who supervised the operations in which the property was damaged, who possessed the sole authority to direct the property's movement, and who exercised the right of access to maintain, move, or protect the property); Caisson v. Home Indemn. Corp., 502 N.E. 2d 1168 (Ill. App. Ct. 1986); Mid-Continent Cas. Co. v. Peerless Boiler & Eng'g Co., 398 P.2d 79 (Okla. 1965) (possessory control is not necessarily divested once a component of machinery is placed at its place of intended use).

[10]The facts reveal that once Rodgers Bros. undertook to offload and move the machinery, Rodgers Bros. exercised near complete control over the machinery. Indeed, apart from the passive actions of providing an offload site, a clear passage to the place where the machinery was to be placed and markings at the site to identify the final placement of the machines, Pall took no part in nor exercised any control over the movement or placement of

of the milling machine, the contracting parties agree that once the milling machine was finally placed on its pads, Rodgers Bros. was to have nothing further to do with it.  In my view, it relinquished all further control of the milling machine, possessory or otherwise, to Pall once the machine was properly placed and Rodgers Bros. equipment was removed from it.  While it was anticipated that Rodgers Bros. would be called back to the facility at a subsequent date to lift the tool changer into position so that it could be finally connected to the milling machine, that does not alter the fact that once the milling machine was in place and Rodgers Bros. had withdrawn its equipment from the machine, it no longer maintained any possessory control over the unit.

      Western World's argument that Rodgers Bros. maintained control until the job was fully completed is undermined by the decision in <u>Michigan Mutual</u>.  There the insured, an electrical subcontractor, completed and installed a switchboard and turned it over to the general contractor in accordance with their contract.  About two months later, the insured's employees were back on the job completing other work called for under the subcontract, when, while assisting City employees examining the metering device, they activated a circuit breaker on the switchboard and thereby caused an explosion.  Michigan Mutual insured the subcontractor under a general liability policy but denied coverage on the ground that the

---

these machines.  Thus, the case is distinguishable from <u>Glens Falls</u>, where the court found that the owner of a damaged silo had maintained possessory control over its property even though at the time of the accident, the silo was being hoisted by a crane and operator it had rented solely for the placement of the silo onto a truck because the owner exercised near complete control over the actions of the crane operator.  Here, the facts are more akin to those in <u>Phoenix of Hartford</u>, where the insured was found to have maintained control over the movements of the equipment.

12

damages were excluded because its insured was in custody and control of the switchboard at the time it was damaged. In rejecting this contention, the court found that the insured's work on the switchboard was complete and it had been turned over to the general contractor at the time of the accident. Under the circumstances, "it would be 'stretching a point' to hold that the switchboard was in the care, custody or control of the insured at the time of the accident." Mich. Mut., 173 So. 2d at 757.

Childtime dictates a similar conclusion in this case. Although the accident here occurred much closer in time to Rodgers Bros.'s completion of its placement of the milling machine, its work moving the milling machine was no less complete. When the milling machine was subsequently damaged by the tool changer falling on it, the milling machine was in no different circumstance than any of the other assorted pieces of machinery within the Pall facility.

Such a conclusion is also consistent with the stated purpose of the exclusion, which is not really called into issue in the instant case. As in Childtime, the property here belonged to a party other than the insured, and at the time of damage to the property, the insured maintained only a passive relationship to it. In these circumstances, there is little incentive or possibility of a fraudulent claim.[11]

---

[11] The discussion in Childtime of the import of the decision in Phoenix of Hartford is also highly instructive on the matter of Rodgers Bros.'s control over the tool changer versus the milling machine. Childtime, 946 So. 2d 1208-09.

13

In conclusion, I find that the tool changer was in the care, custody, or control of Rodgers Bros. at the time it was damaged but that the milling machine was not. I recommend that the court formerly adopt this finding and direct the parties to file a status report on the case with the court within thirty (30) days thereafter.

> Respectfully submitted on this
> 5th day of June 2007.
>
> THOMAS B. McCOUN III
> UNITED STATES MAGISTRATE JUDGE

### NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; see also Fed. R. Civ. P. 6; M.D. Fla. R. 4.20.

Copies to:
The Honorable Elizabeth A. Kovachevich, United States District Judge
Counsel of Record